UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NML CAPITAL, LTD., | : | 03 Civ. 8845 (TPG) |
| | : | 05 Civ. 2434 (TPG) |
| | : | 06 Civ. 6466 (TPG) |
| Plaintiff, | : | 07 Civ. 1910 (TPG) |
| | : | 07 Civ. 2690 (TPG) |
| v. | : | 07 Civ. 6563 (TPG) |
| | : | 08 Civ. 2541 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | 08 Civ. 3302 (TPG) |
| | : | 08 Civ. 6978 (TPG) |
| Defendant. | : | 09 Civ. 1707 (TPG) |
| | : | 09 Civ. 1708 (TPG) |

| | | |
|---|---|---|
| AURELIUS CAPITAL PARTNERS, LP and AURELIUS CAPITAL MASTER, LTD., | : | 07 Civ. 2715 (TPG) |
| | : | 07 Civ. 11327 (TPG) |
| Plaintiffs, | : | |
| v. | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD., | : | 09 Civ. 8757 (TPG) |
| | : | 09 Civ. 10620 (TPG) |
| Plaintiffs, | : | |
| v. | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | **(captions continued on next page)** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
CITI ENTITIES' MOTION FOR A STAY AND IN OPPOSITION TO
<u>NML'S CROSS-MOTION TO COMPEL DISCOVERY</u>**

```
----------------------------------------------------------- x
AURELIUS OPPORTUNITIES FUND II, LLC      :
and AURELIUS CAPITAL MASTER, LTD.,       :    10 Civ. 1602 (TPG)
                                         :    10 Civ. 3507 (TPG)
                Plaintiffs,              :    10 Civ. 3970 (TPG)
                                         :    10 Civ. 8339 (TPG)
            v.                           :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                Defendant.               :
                                         :
----------------------------------------------------------- x
                                         :
BLUE ANGEL CAPITAL I LLC,                :
                                         :    07 Civ. 2693 (TPG)
                Plaintiff,               :    10 Civ. 4101 (TPG)
                                         :    10 Civ. 4782 (TPG)
            v.                           :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                Defendant.               :
----------------------------------------------------------- x
```

The non-party Citi Entities respectfully submit this Reply Memorandum of Law in further support of their motion to stay all further production or proceedings pursuant to the September 25 Order and the NML Subpoena, and in opposition to NML's cross-motion to compel discovery.[1]

**PRELIMINARY STATEMENT**

Plaintiffs do not deny that the Supreme Court will soon issue a decision that could obviate any further discovery from the Citi Entities relating to Argentine assets not located in the United States. Nor do they credibly argue that they will be prejudiced by a few weeks' delay in further efforts to produce documents or data, especially given the extraordinary search and review undertaken by the Citi Entities that resulted in the production of an enormous amount of data that Plaintiffs are still analyzing and that appear likely to be entirely useless to them. Finally, while Plaintiffs repeatedly express their ire toward the Republic, that does not permit them to punish the Citi Entities.

**ARGUMENT**

**I. A STAY IS WARRANTED BECAUSE THE SUPREME COURT'S IMPENDING RULING WILL DETERMINE THE PROPRIETY OF PLAINTIFFS' DISCOVERY REQUESTS**

Plaintiffs offer this Court 34 pages of briefing, yet never address the fundamental point: the Supreme Court is on the verge of deciding "[w]hether post-judgment discovery in aid of enforcing a judgment against a foreign state may be ordered with respect to all assets of a foreign state regardless of their location or use . . . or is limited to assets located in the United States that are potentially subject to execution under the FSIA . . . ." Brief for Petitioner, *Republic of Argentina v. NML Capital, Ltd.*, No. 12-842, 2014 WL 768310, at *i (Feb. 24, 2014). Plaintiffs

---

[1] Defined terms used herein have the same meaning as they do in the Memorandum of Law in Support of the Citi Entities' Motion for a Stay, filed in the above-captioned actions on March 20, 2014 ("Citi Br.").

do not dispute that the Supreme Court's decision will determine the propriety of the discovery they seek from the Citi Entities. Plaintiffs do not dispute that the Supreme Court's decision is expected to be issued by the end of its term in June. And Plaintiffs do not dispute that, if the Supreme Court rules against them, they will have no basis for continuing to pursue worldwide discovery from the Citi Entities.

Under these circumstances, a stay is appropriate because "[i]t would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision." *In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90 (GBD), 2001 U.S. Dist. LEXIS 2047, at *8 (S.D.N.Y. Feb. 27, 2001); s*ee also Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (instructing district court to stay further proceedings pending a Supreme Court decision in a closely related case that was likely to determine the question of liability); Citi Br. at 7-8.

The cases cited by Plaintiffs are not to the contrary – they are irrelevant. (*See* NML Br.[2] at 8-9.) For example, in *In re Tremont Securities Law, State Law, and Insurance Litigation*, the Court was concerned about "a litigant in one cause be[ing] compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." No. 08 Civ. 11117, 2013 WL 4730263, at *4 (S.D.N.Y. Sept. 3, 2013) (Griesa, J.) (internal quotation marks omitted). No such concern exists here: NML is a party in the Supreme Court case, and Aurelius is participating as an *amicus curiae*. The Court's other concerns in *Tremont* – that the Supreme Court decision would not soon issue, and that there was only a "mere possibility" that it would

---

[2] "NML Br." refers to the Memorandum of Law in Opposition to the Citi Entities' Motion for a Stay of Discovery and in Support of NML's Cross-Motion to Compel Discovery filed by NML in Docket No. 03 Civ. 8845 (TPG) on April 7, 2014 and in the other above-captioned NML dockets on April 17, 2014.

be relevant, *id.* – are likewise not present here.  The Supreme Court's decision will likely be issued in less than two months, and it will be directly on point.

Plaintiffs' citation of cases employing a five-factor balancing test before issuing a stay is also irrelevant.  (*See* NML Br. at 10.)  Many cases cite no such rule under the circumstances existing here.  *See, e.g.*, *Marshel*, 552 F.2d at 472 (instructing district court to stay further proceedings pending a Supreme Court decision); *Jugmohan v. Zola*, No. 98 Civ. 1509 (DAB), 2000 U.S. Dist. LEXIS 1910, at *13 (S.D.N.Y. Feb. 24, 2000) (staying proceedings pending a Supreme Court decision).  And each of the five factors favors the grant of a stay in this case:

- First, as explained further below, Plaintiffs will suffer no prejudice from a brief delay in the proceedings.

- Second, Argentina undoubtedly has an interest in staying discovery while it vindicates its position in the Supreme Court.

- Third, the Court's interest in judicial economy is best served by a stay, as proceeding a few weeks before the Supreme Court defines the proper scope of discovery would be "unnecessarily wasteful" of the Court's resources.  *In re Literary Works*, 2001 U.S. Dist. LEXIS 2047, at *7.

- Fourth, the Citi Entities have largely complied with the outstanding order and subpoena.

- And fifth, the best expression of the public interest is contained in the *amicus* brief filed in the Supreme Court by the United States, which unequivocally states that "[a]llowing sweeping discovery into foreign sovereigns' assets would . . . threaten harm to the United States' foreign relations."  Brief for the United States as Amicus Curiae in Support of Petitioner, *Republic of Argentina v. NML Capital, Ltd.*, No. 12-842, 2014 WL 827994, at *21 (Mar. 3, 2014).

## II. PLAINTIFFS WILL NOT BE PREJUDICED BY A STAY BECAUSE THEIR GLOBAL FISHING EXPEDITIONS HAVE YIELDED NO USEFUL INFORMATION, AND THEY HAVE NO URGENT NEED FOR ADDITIONAL INFORMATION

The Citi Entities have maintained all along that Plaintiffs' demands are not reasonably calculated to lead to the discovery of information relevant to the satisfaction of their judgments against Argentina.  That conclusion has been validated by the results of the huge search

undertaken in compliance with the September 25 Order. The Citi Entities have searched numerous databases and other sources of information and have produced a vast amount of information to Plaintiffs, including more than 35,000 pages of wire transfer instructions pertaining to hundreds of entities that are not liable for Argentina's judgments.[3] (*See* Nelson Decl. ¶ 3.)

Nothing relevant has been found. Plaintiffs cite not one shred of evidence that these efforts have been anything other than a colossal waste of time.[4] While NML refers to a single litigation, commenced as a result of other searches, to attach assets of the Comisión Nacional de Actividades Espaciales ("CONAE"), and another effort relating to an account held by Argentina at a Swiss bank (*see* NML Br. at 15-16), NML has not yet attached any valuable CONAE rights, and was unsuccessful in its attempt to execute on the Swiss account (*id.* at 16 n.7). It is thus likely that, at the end of their global fishing expeditions, Plaintiffs will be no closer to satisfying their judgments than they were at the beginning.

Plaintiffs therefore cannot explain how any brief stay could harm them. It is most unlikely that any remaining efforts will bear more fruit than the efforts already undertaken, and even Plaintiffs do not seriously contend that there is any urgency – indeed Plaintiffs have

---

[3] Aurelius' claim that the Citi Entities have "produced only 68 pages of documents and wire transfer information that produced [sic] from an electronically searchable database" (Aurelius Corrected Br. at 2 n.1) is entirely disingenuous. That the wire transfer information is "electronically searchable" says nothing about the time and effort that it took to conduct the search, or the time and effort that it took to sort through the results returned by Aurelius' 905 overbroad search terms to find the wire transfers that were actually responsive to Aurelius' request. Moreover, the fact that, besides the wire transfers, only a tiny number of responsive documents, none of which is useful, were identified in all of the other worldwide searches conducted by the Citi Entities demonstrates that this pointless and harassing exercise serves no valid purpose.

[4] To the extent that Plaintiffs have not yet finished analyzing the enormous amount of data produced by the Citi Entities, that is further reason to grant a stay at this time.

themselves been the cause of much longer delays.[5] While Plaintiffs refer to "the staleness of bank information" (NML Br. at 10; *see also id.* at 16), the information was stale when the demands were made, as Plaintiffs insisted on production of old and cold information dating back to the beginning of 2011. Plaintiffs' newfound urgency may be explained by a premonition that the Supreme Court will rule against them. If they are right, as is likely, then a stay is even more appropriate.

## III. PLAINTIFFS' ADDITIONAL DISCOVERY DEMANDS SHOULD NOT BE ENFORCED IN ANY EVENT

Plaintiffs' additional demands, which are not reasonably calculated to lead to the discovery of attachable assets, should not be enforced irrespective of how the Supreme Court rules, and certainly not before then.

### A. Citibank Should Not Be Required to Produce the Additional Wire Transfer Information Demanded by NML

In response to what NML itself characterizes as "extraordinary third-party discovery" demands (NML Br. at 9), NML agrees that the Citi Entities have "already run searches on and produced documents with respect to 72% of the entity names included in the NML Subpoena" (*id.* at 15) and that the Citi Entities have thus "complied with the vast majority of the requests" in the NML Subpoena (*id.* at 13). NML further agrees that the Citi Entities have fully complied with its second subpoena, the Me Too Subpoena. (*See id.* at 6.) Nevertheless, NML demands that Citibank conduct additional global searches for wire transfer data for another 111 entities – none of which is the judgment debtor or apparently liable for any judgments against the Republic – before the Supreme Court determines the propriety of NML's global discovery demands.

---

[5] Aurelius delayed briefing on its motion to compel for more than five months, and would have delayed longer had the Court not ordered it to proceed. (*See* Knapp Decl. Ex. 7 at 2.) And NML waited almost eight months after serving the NML Subpoena to send its proposed search parameters to the Citi Entities. (*See* Citi Br. at 5.)

NML offers no compelling reason why Citibank should have to search for the additional 111 names at all, let alone before the Supreme Court rules.[6] Indeed, NML concedes that it has no basis whatsoever for seeking discovery concerning at least one of the additional 111 entities. (*See* NML Br. at 20 n.9 (conceding that BNA "has been definitely excluded for discovery purposes by the Court," so that Citibank "need not search for documents related to BNA").) With respect to the remaining 110 entities, the best argument NML can muster is that "many" of them are "suspected Argentine alter egos" (*id.* at 16) – even though none has been found to be an alter ego, and several have been found *not* to be alter egos.[7] Before a judgment creditor is entitled to discovery on an alter ego theory, it must make a threshold showing by putting "facts before the Court to show the basis for the allegation." *NML Capital, Ltd. v. Republic of Argentina*, No. C 12-80185 JSW (MEJ), 2013 WL 655211, at *1 (N.D. Cal. Feb. 21, 2013), *objection filed* Mar. 7, 2013. NML made no such showing in that case, and has made no such showing here.

---

[6] While NML attempts to justify its demand that Citibank search for hundreds of additional names by asserting that this Court and the Second Circuit "approved the broad definition in connection with the 2010 subpoenas to BNA and Bank of America" (NML Br. at 19), NML knows that is not true. Neither this Court nor the Second Circuit ever "approved" the 2010 subpoenas. This Court enforced the subpoenas only on the condition that they be "narrow[ed] . . . to eliminate entities that, realistically, where there could be nothing productive gained." Hr'g Tr., *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG) (S.D.N.Y. Aug. 30, 2011) at 44:6-8. And when the Second Circuit affirmed the Court's holding regarding the sovereign immunity implications of the 2010 subpoenas, it unambiguously stated that it was *not* addressing "the parameters of the document requests." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 206 n.5 (2d Cir. 2012), *cert. granted sub nom Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 895 (Jan. 10, 2014).

[7] *Compare* Knapp Decl. Exs. 6, 12, 13 (seeking information as to Aerolineas Argentinas, AR-SAT, and ENARSA) *with* Order, *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (S.D.N.Y. Aug. 19, 2009) (majority-owned airline Aerolineas Argentinas is not liable for the Republic's debts); *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG), 2011 WL 1533072, at *5 (S.D.N.Y. Apr. 22, 2011) (majority-owned satellite company AR-SAT is not liable for the Republic's debts); *NML Capital, Ltd. v. Republic of Argentina*, No. 09 Civ. 7013 (TPG), 2011 WL 524433, at *7 (S.D.N.Y. Feb. 15, 2011) (majority-owned energy company ENARSA is not an alter ego of the Republic); *NML Capital, Ltd. v. Republic of Argentina*, 892 F. Supp. 2d 530 (S.D.N.Y. 2012) (ENARSA is not otherwise a "part of" the Republic or liable for its debts).

### B. The Citi Entities Should Not Be Required to Produce the Additional Information Demanded by Aurelius

For months, Aurelius demanded that the Citi Entities search for and produce account information from Citibank's branch in Argentina. (*See* Knapp Decl. Ex. 14.) It did so despite this Court's directive that "discovery should not be targeted to assets located in Argentina, as the FSIA would clearly not allow plaintiffs to seize these assets," *Aurelius Capital Partners v. Republic of Argentina*, No. 07 Civ. 2715, 2013 WL 857730, at *2 (S.D.N.Y. Mar. 7, 2013), and despite Aurelius' representation in its May 27, 2013 reply brief that its revised requests were "not targeted to assets in Argentina." In a footnote, Aurelius now reverses course and states that it is "not at this time seeking to compel production of statements and account documentation for bank accounts at the Argentina branch . . . because Citibank has agreed to produce information regarding transfers between those accounts and locations outside of Argentina." (Aurelius Corrected Br.[8] at 3 n.2.) Inexplicably, however, Aurelius still claims that account documents in Argentina "are covered by the subpoenas," and it purports to "reserve all rights with respect to further production of account documents." (*Id.*) Aurelius offers no justification for disregarding this Court's prior directive and its own prior representation about the scope of its demands, and there is none. The Citi Entities should not now, nor should they ever, have to produce account information from Citibank's branch in Argentina.

Nor should the Citi Entities have to continue to search for and produce anything else relating to any of the topics covered by the September 25 Order. As Aurelius correctly points out, the Citi Entities did indeed "conduct[] a 'global search' for responsive documents." (*Id.* at 6.) The Citi Entities told Aurelius that the search did not reveal any responsive transactional

---

[8] "Aurelius Corrected Br." refers to the Corrected Memorandum of Law in Opposition to Citibank's Motion for a Stay of Discovery filed by Aurelius in the above-captioned Aurelius actions on April 10, 2014.

relationships, OTC derivatives, or letters of credit in Argentina or anywhere else in the world. (*See* Declaration of Eric J. Finkelstein in Opposition to Citibank's Motion for a Stay of Discovery, filed in the above-captioned Aurelius actions on April 7, 2014, Ex. G at 4.) Aurelius knows that the Citi Entities are not "withholding documents" related to those types of transactions. (Aurelius Corrected Br. at 3.) The documents simply do not exist. Aurelius should not be permitted to continue its harassment of the Citi Entities.[9]

## CONCLUSION

For the foregoing reasons, the Citi Entities' motion to stay further production or proceedings pursuant to the September 25 Order and the NML Subpoena should be granted, and NML's cross-motion to compel discovery should be denied.

Dated: New York, New York
        April 17, 2014

                              DAVIS POLK & WARDWELL LLP

                              By:  /s/ Karen E. Wagner
                                    Karen E. Wagner
                                    James L. Kerr
                                    Lindsey T. Knapp

                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Telephone:  (212) 450-4000
                                    Facsimile:   (212) 701-5800

                                    *Counsel to Non-Parties Citibank, N.A.,*
                                    *Citicorp North America Inc., Citicorp*
                                    *USA Inc., Citigroup Global Markets*
                                    *Inc., and Citigroup Inc.*

---

[9] With respect to the Swiss law issue, Aurelius is wrong on the facts and wrong on the law. However, the issue is now moot, as Aurelius has been informed that no responsive data or documents were identified in the search conducted by Citibank's branch in Switzerland.